BARRY J. PORTMAN
Federal Public Defender
JOSH COHEN
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700

Counsel for Defendant SIMON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-07-0335 SI |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS** |
| | ) | |
| v. | ) | Hearing Date: September 7, 2007 |
| | ) | |
| MARTIN SIMON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

1

**TABLE OF CONTENTS**

2

3    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4

5    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

7    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8        I.    The Federal Prosecution of Mr. Simon Violates the *Petite* Policy . . . . . . . . . . . . 3

9        II.   The Indictment Should Be Dismissed Because Mr. Simon Has Suffered

10             Extraordinary Prejudice As A Result of Preindictment Delay . . . . . . . . . . . . . . . 4

11       III.  The Indictment Should Be Dismissed Because Successive Federal Prosecution

12             For Identical Conduct Is Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13             A.    The Foundation of the Doctrine of Dual Sovereignty Was

14                   Undercut By *Benton v. Maryland* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15             B.    Full Incorporation Has Undermined Dual Sovereignty In Other

16                   Constitutional Contexts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17             C.    The Expansion of Federal Criminal Law Further Undermines the

18                   Doctrine of Dual Sovereignty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

19       IV.   The Court Should Order the Government to Produce Discovery Relating to the

20             Decision to Prosecute Mr. Simon In Federal Court . . . . . . . . . . . . . . . . . . . . . . . 12

21

22   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

23

24

25

26

1

**TABLE OF AUTHORITIES**

2

FEDERAL CASES

3

Abbate v. United States, 359 U.S. 187 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

4

Barron v. Baltimore, 32 U.S. (7 Pet.) 243 (1833) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

5

Bartkus v. Illinois, 359 U.S. 121 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 12, 13

6

Benton v. Maryland, 395 U.S. 784 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

7

Brewster v. City of Napa, 210 F.3d 1093 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

8

Elkins v. United States, 364 U.S. 206 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

9

Fox v. Ohio, 46 U.S. (5 How.) 410 (1847) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

10

Heath v. Alabama, 474 U.S. 82 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

11

Lanza, 260 F.2d at 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

12

Lovasco, 431 U.S. at 296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

13

Moore v. Illinois, 55 U.S. (14 How.) 13 (1852) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

14

Murphy v. Waterfront Commission, 378 U.S. 52 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

15

Petite v. United States, 361 U.S. 529 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

16

Rinaldi v. United States, 434 U.S. 22 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 7

17

United States v. All Assets of G.P.S. Automobile Corp., 66 F.3d 483 (2d Cir. 1995) . . . .  passim

18

United States v. Bernhardt, 831 F.2d 181 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

19

United States v. Figueroa-Soto, 938 F.2d 1015 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . .  8

20

United States v. Grimes, 641 F.2d 96 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10, 11

21

United States v. Guy, 903 F.2d 1240 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

22

United States v. Guzman, 85 F.3d 823 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

23

United States v. Krasn, 614 F.2d 1229 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

24

United States v. Lanza, 260 U.S. 377 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

25

United States v. Lovasco, 431 U.S. 783 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 5, 7

26

United States v. Marion, 404 U.S. 307 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

United States v. Moran, 759 F.2d 777 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Ross, 123 F.3d 1181 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Sherlock, 962 F.2d 1349 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Snell, 592 F.2d 1083 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Zone, 403 F.3d 1101 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Weeks v. United States, 232 U.S. 383 (1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

FEDERAL STATUTES

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Evid. 609 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MISCELLANEOUS

Akhil Reed Amar & Jonathan L. Marcus, Double Jeopardy Law After Rodney King, 95 Colum.
    L. Rev. 1, 8 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

1    BARRY J. PORTMAN
     Federal Public Defender
2    JOSH COHEN
     Assistant Federal Public Defender
3    19th Floor Federal Building
     450 Golden Gate Avenue
4    San Francisco, CA 94102
     Telephone: (415) 436-7700
5
     Counsel for Defendant SIMON
6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,            )    No. CR-07-0335 SI
                                          )
12              Plaintiff,                )    **DEFENDANT'S NOTICE OF MOTION**
                                          )    **AND MOTION TO DISMISS**
13        v.                              )
                                          )    Hearing Date: September 7, 2007
14   MARTIN SIMON,                        )
                                          )
15              Defendant.                )
     _____)
16

17        TO:    UNITED STATES OF AMERICA, PLAINTIFF; AND SCOTT N. SCHOOLS,
                 UNITED STATES ATTORNEY; AND ALLISON DANNER, ASSISTANT
18               UNITED STATES ATTORNEY.

19        PLEASE TAKE NOTICE that on September 7, 2007, at 11:00 AM, in the courtroom of

20   the Honorable Susan Illston, or as soon thereafter as this matter may be heard, defendant Martin

21   Simon will, and hereby does, move this Court to dismiss the indictment.  This motion is based on

22   the instant notice, the following memorandum of points and authorities, all other applicable

23   constitutional, statutory, and case authority, and such evidence and argument as may be presented

24   at the hearing of this motion.

25   ///

26   ///

1

**INTRODUCTION**

2      Defendant Marin Simon stands accused in this Court of unlawfully possessing a firearm

3  on March 17, 2007.  Mr. Simon has been convicted of and sentenced for the very same offense,

4  based on the very same conduct, in San Mateo County Superior Court.  He now respectfully

5  moves the Court to dismiss the federal indictment because of highly prejudicial preindictment

6  delay, and because a second prosecution for the same offense violates the Double Jeopardy

7  Clause of the Fifth Amendment to the United States Constitution.

8

**BACKGROUND**

9      On **March 17, 2007**, police officers arrested Mr. Simon in San Mateo County on charges

10  of being a felon in possession of a firearm, resisting arrest, and battery on a peace officer.

11      On **March 29, 2007**, a felony complaint was filed in San Mateo County Superior Court

12  charging Mr. Simon with violations of California Penal Code §§ 12021(a), 69, and 243(c)(2), and

13  Health & Safety Code § 11359.

14      On **April 13, 2007**, Mr. Simon entered into a plea agreement that his counsel negotiated

15  with San Mateo County Deputy District Attorney Christine Ford.  Pursuant to that agreement,

16  Mr. Simon pled no-contest in San Mateo County Superior Court to one count of being a felon in

17  possession of a firearm, in violation of California Penal Code § 12021(a), and one count of

18  resisting arrest, in violation of California Penal Code § 69.  In exchange, the State moved to

19  dismiss the remaining counts of the information.  Pursuant to the negotiated disposition, the

20  Court imposed a sentence of two years in state prison.

21      On **April 20, 2007**, the Department of Justice issued a *Petite* waiver authorizing the

22  United States Attorney's Office to prosecute Mr. Simon under 18 U.S.C. § 922(g)(1).

23      On **May 29, 2007**, a federal grand jury returned an indictment charging Mr. Simon with

24  being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

25      On or about **July 29, 2007**, Mr. Simon was transferred from the custody of the California

26  Department of Correction to the United States Marshals Service pursuant to a writ of habeas

1    corpus ad prosequendum.  On **July 30, 2007**, Mr. Simon made his initial appearance in federal

2    district court.

3    **DISCUSSION**

4    **I.        The Federal Prosecution of Mr. Simon Violates the *Petite* Policy**

5               Martin Simon faces prosecution in state and federal courts for identical offenses arising

6    out of the same course of conduct.  Although the Supreme Court has never held that the

7    Constitution categorically bars state and federal prosecution for the same act or transaction, *see*

8    *Heath v. Alabama*, 474 U.S. 82, 88 (1985), it has consistently been "mindful of the potential for

9    abuse in a rule permitting duplicate prosecutions." *Rinaldi v. United States*, 434 U.S. 22, 28

10   (1977).

11              Responding to this concern, the Department of Justice developed an internal policy

12   commonly referred to as the *Petite* policy.  *See* United States Department of Justice, United

13   States Attorneys' Manual ("Manual"), Title 9, § 9-2.031 (2d ed. 2000); *see also Petite v. United*

14   *States*, 361 U.S. 529, 531 (1960).  This policy was designed to prohibit successive prosecutions

15   based on the same transaction or occurrence "except when necessary to advance compelling

16   interests of federal law enforcement." *Rinaldi*, 434 U.S. at 29 & n.14.

17              The *Petite* policy was enacted not only to promote efficient utilization of federal

18   prosecutorial resources, but also to protect defendants from the unfairness of multiple

19   prosecutions and punishments for substantially the same act or acts.  *See id.* at 28 (noting that

20   policy is supposed to "protect interests which, but for the 'dual sovereignty' principle inherent in

21   our federal system, would be embraced by the Double Jeopardy Clause").  As such, it applies

22   "whenever there has been a prior state or federal prosecution resulting in an acquittal, a

23   conviction, including one resulting from a plea agreement, or a dismissal or other termination

24   of the case on the merits after jeopardy has attached." Manual, § 9-2.031(C).

25              Here, Mr. Simon was convicted and sentenced for being a felon in possession of a

26   firearm in San Mateo County.  Accordingly, under the *Petite* policy, this successive federal

prosecution is not warranted unless three criteria are satisfied:

> 1)    The matter . . . involve[s] a substantial federal interest.
>
> 2)    The prior prosecution . . . left that substantial federal interest demonstrably unvindicated.
>
> 3)    The government . . . believe[s] that the defendant's conduct constitutes a federal offense, and that the admissible evidence probably will be sufficient to obtain and sustain a conviction.

Manual at 9-2.031(A).

    Mr. Simon respectfully submits that these criteria are not satisfied in this case. According to the federal prosecutors' manual, the Department of Justice will generally "presume that a prior prosecution, regardless of result, has vindicated the relevant federal interest." *Id.* at § 9-2.031(D). While this presumption can be overcome when a state sentence is "manifestly inadequate," the manual cites as an example of such inadequacy "a case in which the charges in the initial prosecution trivialized the seriousness of the contemplated federal offense, for example, a state prosecution for assault and battery in a case involving the murder of a federal official." *Id.* Here, by contrast, Mr. Simon's state-court prosecution resulted in a serious felony conviction and a substantial prison term. As such, there is nothing about the state prosecution of this matter that left a federal interest "demonstrably unvindicated."

    Unfortunately, the *Petite* henhouse is guarded by the fox; the Court cannot compel the government to adhere its own policy. *See United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979). It can, however, ensure that the consequences of the government's decision *not* to adhere to the policy do not run afoul of the Mr. Simon's constitutional rights.

## II.    The Indictment Should Be Dismissed Because Mr. Simon Has Suffered Extraordinary Prejudice As A Result of Preindictment Delay

    The Fifth Amendment's Due Process Clause protects a criminal defendant against harm occasioned by pre-accusation delay. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989). When such delay results in prejudice to the accused and offends fundamental conceptions of criminal justice, the appropriate

1    remedy is dismissal of the indictment. *See Lovasco*, 431 U.S. at 790.

2           The Ninth Circuit has adopted a two-pronged test to determine whether pre-indictment

3    delay rises to the level of a deprivation of due process. First, a defendant must show that the

4    delay caused actual prejudice. *See United States v. Moran*, 759 F.2d 777, 780 (9th Cir. 1985).

5    Second, the length of the delay must be balanced against the reason for the delay. *See id.* at 781.

6    If compelling the defendant to stand trial under the particular circumstances at issue would

7    offend "the community's sense of fair play and decency," the prosecution violates due process

8    and should be aborted. *See Lovasco*, 431 U.S. at 790 (quoting *Rochin v. California*, 342 U.S.

9    165, 173 (1952)).

10          Here, the federal government did not indict Mr. Simon until his conviction in state court

11   was final and he had been sentenced for his offense. The prejudice that has inured to Mr. Simon

12   as a result of this delay is extraordinary: Mr. Simon can no longer exercise his fundamental

13   constitutional right to stand trial and testify in his own defense, since any attempt to do so would

14   result in the admission of his plea in state court *to the very same offense* for which he now stands

15   accused. *See* Fed. R. Evid. 609; *Brewster v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000).[1]

16   Mr. Simon has thus lost a critical witness–himself–as the direct and proximate result of the delay

17   in bringing him to federal court. As the only witness to the events who is not a police officer,[2]

18   Mr. Simon is uniquely capable of offering such testimony at trial. His unavailability as a witness

19   is therefore highly prejudicial to his defense.

20          In addition to prejudice, the Court must consider the length and explanation for the delay

21   _____

22          [1]The Ninth Circuit has held that actual prejudice does not arise when, during a period of
     preindictment delay, a defendant sustains a conviction in an *unrelated* case, even though that

23   conviction might be used for impeachment purposes should the defendant testify at trial. *See
     United States v. Krasn*, 614 F.2d 1229, 1235 (9th Cir. 1980). The situation at bar is

24   distinguishable in an important respect: The conviction that Mr. Simon sustained was for being a
     felon in possession of a firearm. As such, admission of the prior conviction at trial would not

25   merely impeach his character or credibility; it would actually establish his guilt.

26          [2]Discovery supplied by the government reveals that efforts by law enforcement to locate
     civilian eyewitnesses to the events at issue were unsuccessful.

1   in bringing Mr. Simon to federal court.  In absolute terms, the delay between Mr. Simon's arrest

2   (on March 17, 2007) and his federal indictment (on May 29, 2007) was not excessive.  What is

3   significant is that the delay coincided almost perfectly with the state prosecution of Mr. Simon

4   for the same conduct.  On April 13, 2007, Mr. Simon was sentenced in San Mateo County

5   Superior Court; exactly one week later, on April 20, 2007, the Department of Justice authorized

6   the United States Attorney's Office to proceed with the federal case.

7       Dismissal of the indictment is warranted when preindictment delay "caused substantial

8   prejudice to [the defendant's] rights to a fair trial and . . . the delay was an intentional device to

9   gain tactical advantage over the accused."  *United States v. Marion*, 404 U.S. 307, 324 (1971).  In

10  fact, the government need not have expressly intended to secure a strategic benefit; rather, delay

11  is constitutionally problematic–and may require dismissal–whenever the government acts "in

12  reckless disregard of circumstances, known to the prosecution, suggesting that there existed an

13  appreciable risk that delay would impair the ability to mount an effective defense."  *Lovasco*, 431

14  U.S. at 296 n.17.

15      The timing of the federal indictment in this case strongly supports the inference that the

16  United States Attorney's Office waited for Mr. Simon to be convicted in state court before

17  initiating the federal prosecution.  The government was surely aware that state-court proceedings

18  were underway, and hence should have appreciated the likelihood that a conviction would ensue.

19  Nonetheless, the federal government apparently took no measures to avert or stay the state-court

20  action pending a federal investigation.

21      By waiting instead for the state-court conviction to become final, federal prosecutors

22  secured a tremendous tactical advantage in this case: Mr. Simon can no longer defend himself by

23  offering testimony that is at odds with the version of events reported by law enforcement.  Such

24  maneuvering in order to "increase the odds of conviction" is, at a minimum, "questionable."

25  *United States v. Ross*, 123 F.3d 1181, 1186 (9th Cir. 1997).  When, as here, actual prejudice

26  ensues, the delay violates the defendant's right to due process.  *See id.*

1      The government's decision to await the outcome of the state-court matter before indicting

2  Mr. Simon offends traditional notions of decency and fair play.  *See Lovasco*, 431 U.S. at 790.

3  This is not a case in which federal authorities picked up a prosecution that the state elected not to

4  pursue.  It is not a case in which the state prosecuted but failed to obtain a conviction.  It is not

5  even a case in which the state prosecuted and convicted but failed to send the defendant to

6  prison.  Rather, Mr. Simon pled guilty to being a felon in possession of a firearm and was

7  sentenced to state prison for precisely the length of time that state prosecutors recommended.

8      The government's own prosecutorial manual recognizes that a successive federal

9  prosecution under these circumstances is wrong.  Dual sovereignty is not a license to perpetuate

10  the very evil that the Double Jeopardy Clause was designed to prevent, *viz.*, dual punishments for

11  a single offense.  *See Rinaldi*, 434 U.S. at 28 (noting that *Petite* policy "protect[s] interests

12  which, but for the 'dual sovereignty' principle inherent in our federal system, would be embraced

13  by the Double Jeopardy Clause").  That the government has the power to violate the *Petite* policy

14  does not mean that a second punishment is consonant with the values enshrined in the Bill of

15  Rights.

16      Successive prosecution is especially offensive where, as here, the defendant has no

17  meaningful opportunity to defend himself in the second case.  There is a significant difference

18  between a successive prosecution that follows a dismissal or acquittal, and a successive

19  prosecution that follows a conviction.  In the former instance, the defendant retains the ability to

20  mount an effective defense in the successive federal proceeding.  In the latter event, the

21  defendant is rendered impotent.  Having made damaging admissions to resolve identical charges

22  in the first forum, he cannot meaningfully exercise his constitutional right to mount an effective

23  defense in the second.

24      If it is acceptable for the United States Attorney to prosecute Mr. Simon, it is

25  acceptable–and shockingly easy–for the federal government to re-prosecute virtually *every*

26  defendant who has been convicted and sentenced in state court for a drug- or firearm-related

1   offense.  That cannot be right.  The government's delay in bringing Mr. Simon to federal court

2   violated his right to due process, and the federal indictment should therefore be dismissed.

3   **III.    The Indictment Should Be Dismissed Because Successive Federal Prosecution For**
          **Identical Conduct Is Unconstitutional**

4

5          In *Bartkus v. Illinois*, 359 U.S. 121 (1959), the Supreme Court held that the Double

6   Jeopardy Clause does not preclude a state prosecution following a federal acquittal for the same

7   offense.  *See id.* at 136; *see also Abbate v. United States*, 359 U.S. 187 (1959) (upholding federal

8   prosecution following state conviction).  The oft-repeated rationale for this proposition is the

9   doctrine of dual sovereignty, which "rests on the notion that a defendant whose conduct violates

10  the laws of two sovereigns has 'committed two different offenses by the same act.'"  *United*

11  *States v. All Assets of G.P.S. Auto Corp.*, 66 F.3d 483, 493 (2d Cir. 1995) (citation omitted).

12  Under a system of dual sovereignty, "a conviction by a court of one sovereign of the offense

13  against that sovereign is not a conviction of the different offense against the other sovereign, and

14  so is not double jeopardy."  *Id.* (quoting *United States v. Lanza*, 260 U.S. 377, 382 (1922))

15  (internal quotation marks and alterations omitted).

16         Mr. Simon recognizes, as he must, that this Court is bound to follow *Bartkus* and the

17  Ninth Circuit decisions that have applied it.  *See*, *e.g.*, *United States v. Figueroa-Soto*, 938 F.2d

18  1015, 1018 (9th Cir. 1991).  Nonetheless, he respectfully submits that the reasoning of *Bartkus*

19  has been undercut by subsequent developments in constitutional law, and that the continued

20  application of dual sovereignty in the context of double jeopardy is out of step with the doctrine's

21  demise in the realm of other core constitutional protections.

22         **A.    The Foundation of the Doctrine of Dual Sovereignty Was**
              **Undercut By *Benton v. Maryland***

23         In 1847, and again in 1852, the Supreme Court ruled that successive punishment by state

24  and federal governments did not violate the Fifth Amendment because the Double Jeopardy

25  Clause was "exclusively [a] restriction[] upon federal power."  *Fox v. Ohio*, 46 U.S. (5 How.)

26  410, 434 (1847); *see also Moore v. Illinois*, 55 U.S. (14 How.) 13, 20 (1852).  This notion

proceeded from an even older decision–*Barron v. Baltimore*, 32 U.S. (7 Pet.) 243 (1833)–holding

that the Bill of Rights was not binding on the states.  In *United States v. Lanza*, 260 U.S. 377

(1922), decided in 1922, the Court relied on *Fox*'s conception of dual sovereignty to uphold a

federal conviction following a state prosecution for substantially the same Prohibition-era liquor

offense.  *See* Akhil Reed Amar & Jonathan L. Marcus, *Double Jeopardy Law After Rodney King*,

95 Colum. L. Rev. 1, 8 (1995) (citing *Lanza*, 260 F.2d at 382).  Thus, by the time the Court

considered *Bartkus* (and its companion case, *Abbate)*, it had a well-developed body of law to

draw upon for its conclusion that a state prosecution following a federal one–or vice-versa–did

not offend the Fifth Amendment.

Significantly, at the time that *Bartkus* was decided, the Fourteenth Amendment had not

yet been held to incorporate the Bill of Rights.  Justice Frankfurter's opinion for the *Bartkus*

majority relied heavily on this consideration, noting that the Court's prior decisions had

"uniformly" rejected total incorporation and that "the relevant historical materials" conclusively

demonstrated the correctness of that approach.  *See* Amar*, supra*, at 9 (citing *Bartkus*, 359 U.S. at

124 & n.3).

Ten years later, however, in *Benton v. Maryland*, 395 U.S. 784 (1969), the Supreme

Court held otherwise, ruling that the Double Jeopardy Clause does in fact apply to the states.  As

such, *Benton* "weaken[ed] the theoretical basis of *Bartkus*, namely that states are not bound to

follow the federal constitutional interpretation of the Double Jeopardy Clause."  *United States v.*

*Grimes*, 641 F.2d 96, 101 (3d Cir. 1981); *see also All Assets*, 66 F.3d at 493.  Now that both

sovereigns are subject to the same constitutional command, the proposition that each can subject

a person to a separate prosecution for the same offense has lost a great deal of its intellectual

integrity.  *See All Assets*, 66 F.3d at 497-98 (Calabresi, J., concurring).

**B.    Full Incorporation Has Undermined Dual Sovereignty In Other**
**Constitutional Contexts**

The "somewhat insecure foundation" supporting successive federal-state prosecutions,

1    *Grimes*, 641 F.2d at 100, is further shaken by post-incorporation developments in other areas of

2    constitutional law.  For example, prior to incorporation of the Bill of Rights against the states, the

3    so-called "Silver Platter Doctrine" allowed federal prosecutors to introduce at trial evidence

4    seized by state investigators in flagrant violation of the Fourth Amendment.  *See Weeks v. United*

5    *States*, 232 U.S. 383, 398 (1914).  In *Elkins v. United States*, 364 U.S. 206 (1960), however, the

6    Supreme Court rejected this practice precisely because the Fourth Amendment's protection

7    against unreasonable searches and seizures now constrained state as well as federal officials.  The

8    fact that the sovereign prosecuting the offense was not the sovereign who obtained the evidence

9    was of no moment, for "[t]o the victim it matters not whether his constitutional right has been

10    invaded by a federal agent or by a state officer."  *Id.* at 215.

11        The use by federal prosecutors of incriminatory testimony compelled by state officers was

12    similarly terminated as soon as the privilege against self-incrimination was applied to the states.

13    *See Murphy v. Waterfront Comm'n*, 378 U.S. 52, 57 (1964) ("Our decision today in *Malloy v.*

14    *Hogan* [378 U.S. 1 (1964)] . . . necessitates reconsideration of this rule.").  Again, the Court

15    analyzed the issue from the individual's perspective, expressing a concern that under the old rule

16    a defendant could be "whipsawed      into incriminating himself under both state and federal law

17    even though the constitutional privilege against self-incrimination is applicable to each."  *Id.* at

18    55 (internal quotation marks omitted).

19        *Benton*–which applied the Double Jeopardy Clause to the states–was decided just five

20    years later.  Strangely, however, in this context "recognition of the applicability of a

21    constitutional right to the states has [not] occasioned a complementary retreat from a rigid

22    doctrine of dual sovereignty."  *Grimes*, 641 F.2d at 102.  This is especially puzzling given the

23    focus of the Supreme Court's analysis in *Elkins* and *Murphy* on the rights of the individual;

24    when the Double Jeopardy Clause is "understood in these individualistic terms, it becomes

25    difficult to accept generalized statements of sovereign interests as justifying the Clause's

26    inapplicability to successive prosecutions by different governments."  *See All Assets*, 66 F.3d at

1  498 (Calabresi, J., concurring).  Indeed, "Alphonse Bartkus probably did not feel better off being

2  doubly prosecuted by different governments rather than the same one."  Amar, *supra* at 9.

3       The thread that connects the unreasonable search and compelled self-incrimination

4  decisions extends as well to double jeopardy: "Whenever a constitutional provision is equally

5  enforceable against the state and federal governments, it would appear inconsistent to allow the

6  parallel actions of state and federal officials to produce results which would be constitutionally

7  impermissible if accomplished by either jurisdiction alone."  *Grimes*, 641 F.2d at 102; *see also*

8  Amar, *supra* at 3 ("[I]t seems anomalous that the federal and state governments, acting in

9  tandem, can generally do what neither government can do alone–prosecute an ordinary citizen

10 twice for the same offence.").  Viewed from this perspective, there is little to recommend

11 *Bartkus*'s "formalistic conception of dual sovereignty [or] the continuing viability of the

12 opinion's interpretation of the Double Jeopardy Clause with respect to the states."  *Grimes*, 641

13 F.2d at 101.

14 **C.    The Expansion of Federal Criminal Law Further Undermines the
        Doctrine of Dual Sovereignty**

15

16      *Bartkus*, to say nothing of *Lanza* or *Moore* or *Fox*, was decided in an era when the body

   of federal criminal law was much smaller and the extent of federal-state cooperation in law

17
   enforcement far less pronounced than it is today.  *See id.* at 102 (noting that "these early opinions

18
   were incapable of addressing the present reality of a greatly expanded criminal law"); *All Assets*,

19
   66 F.3d at 498 (Calabresi, J., concurring) (noting "dramatic changes that have occurred in the

20
   relationship between the federal government and the states since the time of *Bartkus*").  As the

21 area covered by federal criminal law has expanded, defendants in an "enormous" number of

22 cases have found themselves exposed to the risk of dual prosecutions.  *All Assets*, 66 F.3d at 498

23
   (Calabresi, J., concurring).  Meanwhile, increased levels of cooperation between state and federal

24
   law enforcement officers have eroded the plausibility of "the fiction that federal and state

25
   governments are so separate in their interests that the dual sovereignty doctrine is universally

26

1    needed to protect one from the other." *Id.* at 499.

2    These changes have made the once-tolerable risk to individual rights posed by the

3    prospect of successive prosecutions for a single offense "far more dangerous." *Id.* at 498.  The

4    infinitely malleable *Petite* policy cannot properly guard against these risks.  Accordingly,

5    continued reliance by the courts on the doctrine of dual sovereignty to permit successive

6    prosecutions poses a genuine threat to core constitutional principles without countervailing

7    justification.

8    Though the Supreme Court has continued to apply the dual sovereignty doctrine, it has

9    not reconsidered it in the context of successive state-federal or federal-state prosecutions since

10   the Double Jeopardy Clause of the Fifth Amendment was found applicable to the states.  *See id.*

11   at 493 n.8 (majority opinion).  For all of the reasons described above, such reconsideration is

12   long overdue.  Mr. Simon respectfully moves the Court to dismiss the indictment because, taking

13   into account jurisprudential developments after *Bartkus*, this successive federal prosecution

14   violates the constitutional prohibition against being twice placed in jeopardy for the same

15   offense.

16   **IV.    The Court Should Order the Government to Produce Discovery Relating to the
         Decision to Prosecute Mr. Simon In Federal Court**

17

18   In *Bartkus*, the Supreme Court acknowledged that the doctrine of dual sovereignty–and

     thus the rationale for permitting successive prosecutions–has no place when the sovereigns are

19   not in fact acting dually.  *Bartkus*, 359 U.S. at 123-24 (suggesting that one sovereign cannot be a

20   "tool" of another).  Accordingly, the Court left open the possibility that the Constitution would

21   be offended by a successive prosecution that "is not pursued to vindicate the separate interests of

22   the second sovereign, but is merely pursued as a sham on behalf of the sovereign first to

23   prosecute."  *United States v. Guy*, 903 F.2d 1240, 1242 (9th Cir. 1990); *see also United States v.*

24   *Guzman*, 85 F.3d 823, 827 (1st Cir. 1996) (holding that Double Jeopardy Clause bars second

25   prosecution in which prosecutor exercises "little or no volition in its own proceedings").  The

26

1   Double Jeopardy Clause may likewise preclude a second prosecution because the *first*

2   prosecution was a "cover" or "sham" for the prosecution that was soon to follow. *See United*

3   *States v. Zone*, 403 F.3d 1101, 1105 (9th Cir. 2005).

4          The Court's inability to enforce the *Petite* policy, therefore, does not lessen its obligation

5   to ensure that federal and state authorities are not intentionally manipulating the system to

6   achieve the equivalent of a second prosecution for a single offense. *See Bartkus v. Illinois*, 359

7   U.S. 121, 123-24 (1959).  Likewise, the Court must be satisfied that one prosecuting entity is

8   not acting as a "tool" of the other. *Id.*  Either of these scenarios constitutes a so-called "*Bartkus*

9   exception" to the dual-sovereignty doctrine and justifies dismissal of the second prosecution on

10  double jeopardy grounds. *See United States v. Bernhardt*, 831 F.2d 181, 182-83 (9th Cir. 1987)

11  (collusion between state and federal authorities may bar subsequent prosecution).

12         To date, the only discovery that the government has produced relating to its decision to

13  prosecute Mr. Simon in federal court is the letter from the Department of Justice authorizing a

14  deviation from the *Petite* policy.  No information has been supplied that bears on the timing of

15  the decision to prosecute Mr. Simon federally, the rationale for that decision, or the

16  communications between state and federal law enforcement leading up to successive

17  prosecutions.  Mr. Simon must be permitted to review such material in order to determine

18  whether the *Bartkus* exception applies.  Accordingly, he respectfully requests that the Court

19  compel the government to produce any and all evidence of communications, negotiations, and

20  agreements between the United States Attorney's Office and the San Mateo County District

21  Attorney's Office that is germane to the decision by the United States Attorney's Office to

22  prosecute Mr. Simon for the same offense for which he was convicted and sentenced in San

23  Mateo County Superior Court.

24  ///

25  ///

26  ///

1

**CONCLUSION**

2

For the reasons stated, Mr. Simon respectfully urges the Court to dismiss the indictment.

3

In the alternative, Mr. Simon requests an order directing the government to produce discovery

4

bearing on the decision to prosecute him a second time for one offense.

5

Dated:  August 10, 2007

6

Respectfully submitted,

7

BARRY J. PORTMAN
Federal Public Defender

8

/s/

9

10

JOSH COHEN
Assistant Federal Public Defender

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26